**SEMERARO & FAHRNEY, LLC**
R. Scott Fahrney, Esq. │SBN # 017182008
155 Route 46, Suite 108
Wayne, New Jersey 07470
TEL. (973) 988-5070
Email sfahrney@semerarolaw.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **COMMON CENTS DISTRIBUTORS, LLC**<br><br>Plaintiff<br><br>vs.<br><br>**THE PICKLE JUICE COMPANY, LLC, FILIP KEUPPENS, KAT MEYERS, and JOHN DOE(S) 1-10, fictitious entities,**<br><br>Defendants. | Civil Action No. 2:24-cv-007642<br><br>A Civil Action<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff, Common Cents Distributors, LLC ("Plaintiff"), by and through its counsel, R. Scott Fahrney, Esq., of the Law Firm of Semeraro & Fahrney, LLC, by way of a complaint against Defendants, The Pickle Juice Company, LLC ("PJC"); Filip Keuppens ("Filipe"); Kat Meyers ("Kat"); and Does 1-10 (hereinafter collectively referred to as "Defendants") states as follows:

**PARTIES**

1. Plaintiff is a corporation organized and existing under the laws of the State of New Jersey. Plaintiff's principal place of business is located at 184 S. Livingston Avenue, Suite No. 9-378, Livingston, New Jersey, 07039.

2. Both of Plaintiff's founders and members are citizens of New Jersey. Plaintiff's General Manager, resides in Morristown, New Jersey. Plaintiff's Volume Sales Coordinator, resides in Livingston, New Jersey.

3. Defendant PJC is a Texas company with a principal place of business at 325 Innovative Way, Suite C. Mesquite, Texas 75149.

4. Defendant Felipe is a resident of Texas and Executive Vice President of PJC, with a principal place of business at 325 Innovative Way, Suite C. Mesquite, Texas 75149.

5. On information and belief, Defendant Kat is a resident of Texas and the Brand Manager of PJC, with a principal place of business at 325 Innovative Way, Suite C. Mesquite, Texas 75149.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq., including 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1338, and 1367.

7. Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are, respectively, citizens of foreign states and the amount in controversy far exceeds $75,000.

8. Defendants are further subject to specific jurisdiction in this Court because, *inter alia*, it conducts business in the District and has committed at least some of the acts complained of herein within this District.

9. Defendants do business in the State of New Jersey, sell large quantities of products to customers in New Jersey, engage distributors based in New Jersey, maintain an interactive website accessed by residents of New Jersey, and otherwise avail itself of the privilege of doing business in the State of New Jersey.

10. Defendants have purposely directed their activities, including the illegal acts against Plaintiff described below, toward this District and this action arises from those activities.

11. At all relevant times, Defendants were aware the Plaintiff resides in New Jersey and that its illegal acts would cause harm to Plaintiff in New Jersey. Specifically, Plaintiff's Amazon storefront identifies Plaintiff's place of business in New Jersey.

12. On information and belief, Defendants' illegal acts against Plaintiff described below were made to further Defendants' transaction of business in New Jersey by improperly excluding a New Jersey competitor, Plaintiff, from conducting business in New Jersey.

13. Venue in this District is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred in this District and the Defendant is subject to personal jurisdiction in this District.

## BACKGROUND FACTS COMMON TO ALL COUNTS

14. Defendant is in the business of distributing consumer products, including food products sold under the PJC marks ("PJC Products").

15. Defendant PJC is the registered owner of United States Trademark Registration No. 3837353 for Pickle Juice ("the PJC Registration").

16. Plaintiff is in the business of lawfully acquiring and re-selling various consumer products for a profit.

17. Plaintiff resells products through an Amazon storefront.

18. Since its formation, Plaintiff has served hundreds of thousands of customers, if not millions, through its Amazon storefront and is a Top 25 Seller on Amazon.

19. Defendants' illegal actions have irreparably damaged, and threaten to destroy, Plaintiff's successful business.

## ONLINE MARKETPLACES

20. Upon information and belief, Amazon is the world's largest online retailer.

21. According to published reports, Amazon is worth more than the next eight largest retailers located in the United States combined. See JP Mangalindan, Amazon is now worth more than America's 8 largest retailers combined, Yahoo Finance (Jan. 25, 2017), https://finance.yahoo.com/news/amazon-is-now-worth-more-than-americas-8-largest-retailers-combined-124101625.html.

22. Amazon's online e-commerce platform allows for third parties, like Plaintiff, to sell products on its e-commerce platform.

23. The privilege of selling on Amazon is highly advantageous, as Amazon provides third parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

24. At all relevant times, Plaintiff has had a contractual and business relationship with Amazon, such that Plaintiff was and is permitted to sell products on Amazon's e-commerce platform.

25. Third-party sellers, like Plaintiff, create an online storefront on Amazon. When a customer buys a product on Amazon, the customer can see the online store from which the customer is purchasing a product. Thus, Plaintiff has the online equivalent of a brick-and-mortar store.

26. A significant portion of Plaintiff's business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

27. Once Plaintiff acquires products from reputable sources, Plaintiff resells the same products on Amazon at a profit.

28. In general, transactions on Plaintiff's Amazon storefront are completed by Amazon, whereby Amazon ships Plaintiff's products from an Amazon warehouse (known as "Fulfilment by Amazon" or "FBA").

29. Plaintiff has invested significant efforts into building a successful and reputable Amazon storefront.

30. Plaintiff's Amazon storefront has amassed over eleven-thousand reviews and holds a 100% positive feedback rating and has a near perfect 5.0 customer rating.

31. A small sample of Plaintiff's recent reviews are shown below:



32. Any harm that comes to the relationship between Plaintiff and Amazon creates a potential for serious and irreparable injury to Plaintiff.

## DEFENDANTS ATTEMPT TO STIFLE COMPETITION BY FILING FALSE INTELLECTUAL PROPERTY COMPLAINTS

33. Defendants seek to increase its profits by controlling the distribution and pricing of its products, including the PJC Products, through unlawful means.

34. As demonstrated below, Defendants have engaged in a coordinated effort to preclude select third parties from reselling genuine PJC Products on online marketplaces by asserting false allegations of intellectual property infringement and defamation.

35. The purpose of these false complaints and defamatory statements was to prevent Plaintiff from reselling genuine PJC Products on Amazon.

36. The purpose of these false complaints was to damage Plaintiff's reputation and goodwill, such that Amazon would suspend or terminate its relationship with Plaintiff.

37. Plaintiff's ratings, which have taken years to achieve, have been severely affected by these acts of the Defendants.

38. Because Plaintiff resells only genuine products through its Amazon storefront, Defendants have no legitimate intellectual property claim(s) against Plaintiff.

39. Under the first sale doctrine, Plaintiff is lawfully permitted to re-sell PJC Products without violating the intellectual property rights or other legal rights of Defendant.

40. The first sale doctrine provides that, once a manufacturer places a product in the stream of commerce through its first sale, it can no longer enforce its intellectual property rights with regard to re-sellers, so long as the re-sellers are selling authentic, unaltered products.

41. It is well-known among brand owners that Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not.

42. As one Amazon expert has previously stated:

> In order to meet a minimum liability standard, Amazon will act

> upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. …
>
> ***Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.*** Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.
>
> They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it.
>
> *See* Chris McCabe, *False Infringement Claims are Rife on Amazon*, WebRetailer (Apr. 11, 2018), https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/ [Emphasis added].

43. Defendants were, at all relevant times, aware of the foregoing Amazon policy with respect to reports of intellectual property infringement.

44. Defendants were, at all relevant times, aware that Amazon will act on reports of trademark infringement, regardless of the truth of the report.

45. Defendants filed complaints with Amazon that alleged that Plaintiff was selling PJC Products that infringed the PJC Registration.

46. Defendants filed complaints with Amazon that alleged that Plaintiff was selling counterfeit PJC Products.

47. Defendant knew, or should have known, that such allegations were false.

48. Each complaint submitted to Amazon was signed under penalty of perjury by an employee or agent of Defendant or by the Defendant Filipe himself.

49. For example, when submitting an infringement report to Amazon, an intellectual property rights owner must read and accept the following statements:

> "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."
>
> "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."
>
> Report Infringement,
> https://www.amazon.com/report/infringement
> (last visited November 10, 2022).

50. Once confirmed through discovery, all other individual(s) responsible for the false complaints described herein will be added as defendants in this action.

51. On or about July 5, 2024, Plaintiff received a notice from Amazon stating as follows:

> Hello
>
> Based on your Account Health Rating, your account is at risk of imminent deactivation. We removed some of your listings because we received a report from a rights owner that they may infringe the rights owner's trademark, which is a critical violation. Funds will not be transferred to you but will stay in your account while we work with you to address this issue in accordance with the Funds Withholding Policy:
> https://sellercentral.amazon.com/gp/help/external/help.html?itemID=9RA9LYBJ3QP27M6
>
> These are the rights owner's contact details:
> --brandprotection@picklepower.com
>
> Why did I receive this message?
> All sellers on Amazon are expected to follow Amazon Selling Policies and Seller Code of Conduct. We received a report from a rights owner that one or more of your listings are inauthentic. Listing content infringing on the intellectual property of others is against our policies.
>
> If you need help understanding why your listings may infringe the intellectual property rights of others, please search for "Intellectual Property Policy" in Seller Central Help.
> https://sellercentral.amazon.com/gp/help/external/201361070
>
> What can I do to avoid account deactivation?
> To avoid account deactivation, appeal or dispute the violation that led to your account being at risk within 3 days of this notification. To do so, follow the instructions in the banner at the top of your Account Health page in

> Seller Central:
> https://sellercentral.amazon.com/performance/dashboard?ref=ah_em_mpa
>
> We're here to help.
> If you have questions, contact us:
> https://sellercentral.amazon.com/cu/contact-us/performance
>
> To view your account performance, go to the "Account Health" page in Seller Central:
> https://sellercentral.amazon.com/performance/dashboard?reftag=email_appeal
>
> Alternatively, select "Account Health" on the home screen of the Amazon Seller app on your iOS or Android device. The Account Health dashboard shows how well your account is performing against the performance metrics and policies required to sell on Amazon.
>
> -- Download the iOS app:
> https://itunes.apple.com/us/app/amazon-seller/id794141485
> https://itunes.apple.com/us/app/amazon-seller/id794141485
> -- Download the Android app:
> https://play.google.com/store/apps/details?id=com.amazon.sellermobile.android&hl=en_US
> https://play.google.com/store/apps/details?id=com.amazon.sellermobile.android&hl=en_US
>
> ASIN: \B06XCL9MZZ
> Infringement type: Counterfeit
> Trademark asserted: 3837353
> Complaint ID:15553276971
>
> Amazon.com

52. The above report relates to PJC Products, which are referenced by their Amazon Standard Identification Numbers ("ASIN").

53. The PJC Products identified as infringing in the above report were genuine.

54. The PJC Products identified as infringing in the above report were manufactured and distributed by PJC.

55. On information and belief, prior to filing the above report, Defendant knew, or should have known, that the PJC Products sold by Plaintiff were not infringing.

56. On information and belief, Defendant's allegation that the above PJC Products were infringing was knowingly false and made in bad faith.

### **DEFENDANTS REFUSE TO RETRACT ITS FALSE REPORT TO AMAZON**

57. The above false report is part of an ongoing and continuous course of conduct by Defendants to interfere in Plaintiff's ability to resell PJC Products.

58. On or about July 8, 2024, counsel for Plaintiff repeatedly contacted Defendants regarding the report and requested a retraction of the report.

59. To date, Defendants have offered no reasonable explanation for its false report but, nevertheless, refuse to retract the report.

### **HARM TO PLAINTIFF**

60. As a result of the above false rights complaints, Plaintiff's listings relating to PJC Products were suspended, resulting in an immediate loss of revenue.

61. As a result of the above false rights complaints, Plaintiff's store's account health has been severely affected.

62. It is well-known that complaints to Amazon put Amazon sellers in jeopardy of a full selling suspension, meaning that Plaintiff's ability to sell any and all products on Amazon would be lost.

63. On information and belief, Defendants were aware that complaints to Amazon, particularly those alleging infringement, result in selling suspensions.

64. On information and belief, Defendants have used these same tactics, namely filing false infringement complaints, against other Amazon sellers.

65. At no time has Plaintiff ever sold PJC Products that infringed any of Defendant's intellectual property or other legal rights.

66. The PJC Products sold by Plaintiff were, at all times, authentic products bearing the name of the manufacturer, and were otherwise, at all times, sold lawfully.

67. Defendant knowingly made false intellectual property rights complaints against Plaintiff.

68. Upon information and belief, the true purpose of these complaints was to ensure the suspension of Plaintiff's marketplace listings, control pricing and eliminate fair competition.

69. As result of Defendants' false complaints, Plaintiff's performance metrics were irreparably damaged.

70. It is well-known that as much as 90% of all Amazon sales occur from Amazon's "buy box," a section of an Amazon product detail page where customers can add a product to their cart.

71. Amazon determines which seller gets the "buy box" based on a number of factors, including the seller's performance metrics.

72. Defendants' false complaints have damaged Plaintiff's metrics and caused Plaintiff to lose the "buy box" on many of its product listings.

## COUNT I - DECLARATORY JUDGMENT
### (No Trademark Infringement – Against All Defendants)

73. Plaintiff realleges and incorporates all previous paragraphs.

74. Defendant PJC manufactures and distributes PJC Products and place such products into the stream of commerce.

75. Plaintiff stocks, displays, and resells new, genuine PJC Products, each bearing a true mark.

76. Defendant has submitted one or more complaints to Amazon that state that Plaintiff sold PJC Products that infringed, inter alia, the PJC Registration.

77. The PJC Products sold by Plaintiff were not infringing.

78. On information and belief, at the time that Defendants submitted its complaints to Amazon, Defendants had never purchased or examined any PJC Product offered for sale by Plaintiff.

79. Defendants' complaints have caused the suspension of Plaintiff's selling privileges as they relate to PJC Products.

80. As a result of the suspension of Plaintiff's selling privileges, Plaintiff was unable to sell inventory of PJC Products on the Amazon platform.

81. Defendant's complaints put Plaintiff in jeopardy of permanent suspension of all selling privileges, which will cause extraordinary, irreparable, and untold damage on a business that is in the virtually exclusive business of selling products on e-commerce platforms.

82. Under these facts, an actual controversy exists between Plaintiff and Defendant.

83. Plaintiff is entitled to a declaratory judgment that it has not violated Defendant's trademark rights or other rights, whether under Federal or State law.

### COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS
### (Against All Defendants)

84. Plaintiff realleges and incorporates all previous paragraphs.

85. Plaintiff has had an advantageous business relationship with Amazon, which allows Plaintiff to sell on Amazon's e-commerce platform as a third-party seller.

86. Plaintiff is also in a contractual relationship with Amazon. Specifically, Plaintiff has entered into the Amazon Services Business Solutions Agreement ("BSA") with Amazon.

87. The BSA, including Paragraph S-1.2: (1) allows Plaintiff to list products for sale on the Amazon marketplace and promote the products; and (2) requires that Amazon process orders and remit payment to Plaintiff for sales.

88. At all relevant times, Defendants were aware of Plaintiff's business relationship with Amazon, as well as Plaintiff's contractual relationship with Amazon.

89. At all relevant times, Defendants were aware of the terms and conditions of Amazon's BSA and related policies, as well as the advantageous business relationship that comes with being an Amazon seller.

90. Defendants intentionally and improperly interfered with Plaintiff's advantageous and contractual relationship with Amazon using unlawful means, namely, by complaining, in writing, to Amazon, that Plaintiff was selling infringing products.

91. Defendants' conduct directly and proximately caused disruption of Plaintiff's relationship and contract with Amazon, including a breach of Paragraph S-1.2 of the BSA.

92. Defendants intended to cause Amazon to suspend Plaintiff's ability to sell PJC Products on Amazon and therefore interfered with the business relationship Amazon had with Plaintiff.

93. Defendants had actual knowledge that its actions would cause Amazon to suspend Plaintiff's ability to sell PJC Products on Amazon.

94. Defendants' accusations of infringement, made directly to Amazon, were made with the improper motive to harm Plaintiff and for the improper purpose of suppressing competition.

95. Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's listing of PJC Products to be suspended.

96. Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused the suspension of Plaintiff's selling privileges.

97. The intentions of Defendants are demonstrated by the fact that Defendants did not perform any test purchases prior to alleging that the products sold by Plaintiff were infringing.

98. The intentions of Defendants are demonstrated by the fact that Defendants have never offered any coherent explanation for its reports of infringement.

99. Defendants' accusations were false and were made maliciously and with ill will.

100. Plaintiff has been damaged by suspension of these listings by losing revenue related to PJC Products.

101. Plaintiff is entitled to damages, costs and attorneys' fees as allowed by law.

102. Plaintiff has suffered injury and, unless Defendant are enjoined from such activity, will continue to suffer injury.

### COUNT III – DEFAMATION
### (Against all Defendants)

103. Plaintiff realleges and incorporates all previous paragraphs.

104. Defendant published false statements to Amazon regarding Plaintiff as described in this Complaint, including reporting to Amazon that Plaintiff's PJC Products infringed the PJC Registration.

105. Plaintiff did not infringe the PJC Registration.

106. Defendants' false statements were injurious to Plaintiff's business because they caused Amazon to suspend Plaintiff's selling privileges related to PJC Products.

107. Defendants' false statements were injurious to Plaintiff's business because they caused Amazon's and Plaintiff's customers to avoid purchasing products from Plaintiff.

108. Defendants were, at a minimum, negligent in making the false statements to Amazon because, among other things, Defendant knew that Plaintiff sells genuine products.

109. Defendants' false statements are not protected by any privilege.

110.    Because Defendants knew that Plaintiff was selling genuine products, Defendants acted with actual malice or with reckless disregard for the truth of the matter, by submitting false statements to Amazon and Plaintiff's customers.

111.    False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation per se.

112.    Here, Defendants published statements that Plaintiff was engaged in trademark infringement.

113.    Additionally, Plaintiff incurred special harm, including, but not limited to, suspension from selling PJC Products and damage to its relationship with Amazon and its customers.

114.    Whether by defamation per se or by special harm, Plaintiff has suffered injury as Plaintiff's selling privileges related to PJC Products have been suspended and Plaintiff has lost sales of PJC Products and many other products as well as it's Amazon rankings have been severely diminished.

115.    Plaintiff is entitled to damages, costs, and fees as allowed by law.

116.    Plaintiff has suffered injury and, unless Defendant are enjoined from such activity, will continue to suffer injury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays for judgment as follows:

   A. An order declaring that Plaintiff has not infringed any valid and enforceable intellectual property right owned by Defendant, including the PJC Registration;

B. Preliminary and permanent injunctive relief restraining Defendant, its agents, servants, employees, successors and assigns, and all others in concert and privity with Defendant, from filing complaints with Amazon and any other e-commerce platform.

C. Injunctive relief requiring Defendant to rescind all complaints that it has filed against Plaintiff;

D. An award of all damages that Plaintiff has suffered as a result of Defendant's tortious interference;

E. An award of all damages that Plaintiff has suffered as a result of Defendant's defamation;

F. An award of all costs and fee, including attorneys' fees incurred in this Action; and

G. Such other and further relief as the Court shall find just and proper.

                    **Semeraro & Fahrney, LLC**
                    Attorneys for Plaintiff

Dated: July 9, 2024            By: _____
                                          R. Scott Fahrney, Esq.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

                    **Semeraro & Fahrney, LLC**
                    Attorneys for Plaintiff

Dated: July 9, 2024            By: _____
                                          R. Scott Fahrney, Esq.

## DESIGNATION OF TRIAL COUNSEL

R. Scott Fahrney, Esq., of the law offices of Semeraro & Fahrney, LLC is hereby designated as trial counsel.

**Semeraro & Fahrney, LLC**
Attorneys for Plaintiff

Dated: July 9, 2024             By: _____
                                      R. Scott Fahrney, Esq.

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

Pursuant to Local Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any other court or arbitration proceeding. To the best of my knowledge and belief, no other parties should be joined in the above action.

**Semeraro & Fahrney, LLC**
Attorneys for Plaintiff

Dated: July 9, 2024             By: _____
                                      R. Scott Fahrney, Esq.